FINDINGS OF FACT.

The petitioner is an Alabama corporation engaged in the transportation of freight.

The net income of the petitioner for the year 1923, before allowance for any loss under the provisions of section 204 of the Revenue Act of 1921, amounts to $44,512. The net loss for the year 1922 computed under section 204 of the Revenue Act of 1921 amounts to $31,920.01. The income subject to tax and on which the deficiency here involved was computed for the year 1923, after applying the net loss for the year 1922, amounts to $12,591.99.

In computing the deficiency the respondent denied the petitioner the right to the specific credit of $2,000 provided for under section 236 (b) of the Revenue Act of 1921, on the ground that the net income of the petitioner for the year 1923 was in excess of $25,000.

OPINION.

ARUNDELL: The question involved in this case has heretofore been decided adversely to the contentions of the petitioner in *Appeals of American Varnish Co.*, 2 B. T. A. 201, and *S. W. Bridges & Co.*, 4 B. T. A. 750, and *Chicago Nut Co.* v. *Commissioner*, 5 B. T. A. 614.

*Judgment will be entered for the respondent.*

---

APPEAL OF CENTADRINK FILTERS CO., INC.

Docket No. 5214.   Promulgated March 30, 1927.

Adjustments in petitioner's income and deductions for the years involved herein determined.

*Benjamin Mahler, Esq.*, and *Isidore Schlanger, C. P. A.*, for the petitioner.

*Benjamin H. Saunders, Esq.*, and *John W. Fisher, Esq.*, for the Commissioner.

This appeal is from the determination of deficiencies in income and profits taxes for the years 1917, 1918, 1919, 1920, and 1921, in the amounts of $506.53, $255.50, $5,261.34, $2,430.24, and $2,130.83, respectively, a total of $10,584.44. The petitioner alleges error on the part of the Commissioner (1) in twice adding to income for 1917 an item of $958.53, representing the net increase for that year, in the reserve for past due and doubtful accounts; (2) in failing to allow as deductions from income for the years 1919, 1920, and 1921, the cost of labor and overhead consumed in making installations of cabinets and filters in those years; (3) in adding to income

for 1917 and 1918 the sums of $22,424.50 and $29,108.16, respectively, alleged to have been deducted by the petitioner on account of removals of cabinets and filters from customers' premises; (4) in failing to allow as deductions from income, for all of the years involved in the appeal, the losses incurred in those years as a result of the removal of cabinets and filters from customers' premises; (5) in adding to income for the year 1919 the sum of $31,336.89, alleged to represent the cost of additions to cabinets and filters deducted by the petitioner as expense; (6) in failing to allow adequate deductions from income, for all of the years involved in the appeal on account of depreciation of cabinets and filters installed in customers' premises; (7) in refusing to allow deductions from income, for all the years involved in the appeal, on account of depreciation of patents acquired at date of organization from the predecessor companies; and in refusing to allow any value for these patents for invested capital purposes; (8) in twice adding to income for 1921 the sum of $24,371.11, representing the deduction taken by the petitioner on account of depreciation of patents acquired from predecessor companies; and (9) in failing to give credit in computing the deficiency for the year 1917, for the additional tax of $381.08 assessed for that year and paid on July 25, 1923.

## FINDINGS OF FACT.

Petitioner, a New York corporation with its principal office at New York City, was organized in or about the month of February, 1913, and is the outgrowth of the consolidation of the United Centadrink Manufacturing Co. and the New York Centadrink Co. It is engaged in the business of leasing cabinets and filters for supplying cold and filtered drinking water to customers on an annual rental basis, and in the operation of slot machines installed in public places for supplying cold carbonated water to the public.

At January 1, 1917, petitioner carried on its books of account a reserve for past due and doubtful accounts in the amount of $1,592.73; and at the close of the year 1917, this reserve was carried on the books in the sum of $2,551.26, an increase for the year of $958.53, accounted for as follows:

| | |
|---|---|
| Cash collections during the year on accounts previously charged against reserve as uncollectible | $1. 22 |
| By transfer of an account payable in favor of a customer to offset an account receivable charged against the reserve as uncollectible | 14. 80 |
| By charge against bad debt account | 3, 500. 00 |
| Total credits to reserve | 3, 516. 02 |
| Less: Bad debts charged against the reserve during year | 2, 557. 49 |
| Net increase in reserve | 958. 53 |

The charge of $3,500 against bad debts account was transferred to surplus and deducted in arriving at the net income for the year 1917. The revenue agent in arriving at taxable net income used the book net income as a starting point and added to it the net increase in the reserve for the year. The Commissioner, in the deficiency letter, used the net income computed by the revenue agent as the starting point and added to that figure the net increase in the reserve for that year. The result of the Commissioner's action is that the net income shown in the deficiency letter twice includes the increase of $958.53 in the reserve.

All of the parts entering into the construction of the cabinets and filters are purchased by the petitioner. The cost of these parts are charged on the books to a filter material account. During all of the years in controversy the petitioner capitalized the cost of all labor, materials, and overhead consumed in assembling the cabinets and filters and the installation thereof in customers' premises, by charging such cost on its books to cabinet and filter property accounts. In the deficiency letter the Commissioner ruled that only the cost of the materials used in assembling and installing the cabinets and filters should be capitalized, and that the cost of labor and overhead consumed in the same processes should be deducted as expenses. In accordance with this ruling the Commissioner reduced the income for the years 1917 and 1918 by the sums of $14,802.48 and $15,863.12, respectively, alleged to be the costs of labor and overhead incurred in those years in assembling the cabinets and filters and installing them in customers' premises. The Commissioner also reduced the income of the years 1920 and 1921 by the sums of $10,217.40 and $41,353.78, respectively, alleged to be the excess of the book values of additions made in those years to the cabinet and filter property accounts over the actual cost of the materials used in making installations in customers' premises.

Upon the removal of cabinets and filters from customers' premises during the years 1917, 1918, and 1919, the accounting procedure was as follows: Cabinet and filter property accounts were credited with the original cost of assembling and installing the removed cabinets and filters. Filter material account, a capital account, was charged with one-half of the cost of assembling and installation, and the other one-half of such cost was charged to cabinet and filter operating expense accounts. This procedure was based upon the assumption that one-half of the cost of assembling and installation of the removed cabinets and filters was recovered in the value of the salvaged materials, and that the other one-half of such cost was unrecovered because of shrinkage in value of salvaged materials and loss of labor and overhead of installation. At the close of each of

the above stated years the total charges thus made to the cabinet and filter operating expense accounts were transferred by journal entry to surplus account. The amounts so charged to surplus were as follows: 1917, $12,970.19; 1918, $15,521.67; and 1919, $15,279.58. No part of the charge of $12,970.19 was deducted in arriving at book net income for 1917, which the revenue agent used as the starting point for the purpose of computing the taxable net income of that year. One-third of the charges made against surplus in 1918 and 1919, to wit, $5,173.89 and $5,093.19, respectively, was deducted by the petitioner in the returns for those years, the petitioner assuming that the other two-thirds had been recovered through depreciation deductions in returns of prior years. In computing net income in the deficiency letter, the Commissioner has allowed as deductions the entire amounts charged against surplus, as losses sustained from removals of cabinets and filters. At the same time the Commissioner has added to the income of the years 1917 and 1918 the sums of $22,424.50 and $29,108.16, respectively, which he alleges were deducted by the petitioner in those years as losses sustained through removals of cabinets and filters from customers' premises.

For the years 1920 and 1921, the accounting procedure, as it related to removals of cabinets and filters, differed from that in effect in the three preceding years. In 1920 and 1921 the accounting procedure was as follows: Cabinet and filter property accounts were credited with the original cost of assembling and installing the removed cabinets and filters. Filter material account, a capital account, was charged with the actual value of the salvaged materials, and the balance of the original cost of installation was charged to cabinet and filters operating expense accounts. At the close of each of the aforementioned years, the total charges thus made to the cabinet and filter operating expense accounts were transferred by journal entry to and charged against the reserve for depreciation; and no part of such charges were deducted from income in the petitioner's tax returns. Neither has the Commissioner made any deductions from income for the years 1920 and 1921, on account of any losses which may have been sustained in these years from removals of cabinets and filters from customers' premises.

The Commissioner added to the income of the year 1919 the sum of $31,336.89, which he computed in the following manner:

| | |
|---|---:|
| Cabinets and filters additions | $34,090.97 |
| Net additions per original balance sheet | 2,754.08 |
| Difference charged against income | 31,336.89 |

The Commissioner held that the cost of the materials used in assembling and installing additional cabinets and filters during the year was $34,090.97, and since the balance sheet showed a net increase

in the cabinet and filter property accounts for the year 1919 of only $2,754.08, he assumed that the difference of $31,336.89 had been charged against income. The entire cost of assembling and installing additional cabinets and filters during the year, including labor and overhead, as well as materials, was capitalized on the books of account, and no part thereof was deducted, specifically as such, by the petitioner from income. Moreover, in making this adjustment of income the Commissioner failed to take into consideration the fact that the cabinet and filter property accounts had been reduced during the year by crediting thereto the original costs of installation of cabinets and filters removed from customers' premises.

For all of the years under consideration, petitioner took deductions from income for depreciation of cabinets and filters installed in customers' premises. No depreciation was claimed on cabinets and filters on hand but not in use. The deductions which it took for the years 1917 and 1918 were computed on the basis of 10 per cent of the book values, which values included the cost of labor, materials, and overhead used in assembling and installation. The deductions which it took for the years 1919, 1920, and 1921 were computed as follows:

|  | 1919. | 1920. | 1921. |
|---|---|---|---|
| Eight per cent of the cost of materials used in assembling and installing cabinets and filters in customers' premises | $9,223.79 | $7,259.26 | $14,352.19 |
| Cost of labor and overhead used in making installations in each year | 20,109.68 | 23,525.17 | 33,385.55 |
| Total depreciation claimed on cabinets and filters for each year | 29,333.47 | 30,784.43 | 47,737.74 |

The deductions which the Commissioner has allowed in the deficiency letter for depreciation of cabinets and filters, for all of the years involved in the appeal, represent 10 per cent of the total cost of materials used in making all installations, of cabinets and filters to the beginning of each year, plus 5 per cent of the cost of materials used in making additional installations during each year. The average useful life of these cabinets and filters is five years.

Petitioner is the successor to the businesses of the United Centadrink Manufacturing Co., hereinafter referred to as the Manufacturing Company, and the New York Centadrink Co., hereinafter referred to as the New York Company, both of which were New York Corporations. The Manufacturing Company was engaged in the business of manufacturing machines to supply aerated water and the construction of models for the exploitation of patents, and the New York Company in the sale and dispensation of plain, aerated and carbonated beverages. The Manufacturing Company owned approximately 60 per cent of the outstanding capital stock of the New York Com-

pany, and all but five shares of the remainder were owned by stockholders of the Manufacturing Company. With one exception, the executive officers of the two companies were the same. Both companies occupied the same office. Employees of each company performed services for the other. The funds of the separate companies were transferred from one to the other as their necessities required. The machines manufactured by the Manufacturing Company were sold exclusively to the New York Company and paid for by the latter at its convenience. The New York Company did not purchase machines from any other source.

Under date of January 16, 1913, the Manufacturing Company and the New York Company entered into an agreement to consolidate into one corporation. In accordance with the terms of the agreement, the petitioner was organized in or about the month of February, 1913, and immediately took over the businesses and assets of the two corporations, parties to the agreement. Among the assets taken over from the Manufacturing Company were approximately 18 or 20 patents. For the businesses and assets of the two predeccessor companies the petitioner issued its own common capital stock of a par value of $685,000 and preferred stock of a par value of $325,000. The good will and patents acquired from the predecessor companies were carried on the books of account at a lump-sum value of $879,150.86. The Commissioner determined the average tangible assets of the New York Company, for the five-year period 1908 to 1912, inclusive, to be $80,774.12, and the average annual earnings for the same period to be $25,013.08. By capitalizing at the rate of 15 per cent, the average annual earnings in excess of 10 per cent of the average tangibles, the Commissioner determined that the value of the good will acquired from the New York Company was $112,904.47, and has allowed this amount as the value of the good will for invested capital purposes. The Commissioner further determined the average tangible assets of the Manufacturing Company, for the five-year period 1908 to 1912, inclusive, to be $77,597.68, and the average annual earnings, for the same period, to be $5,575.88. Since the average annual earnings represented a return of less than 8 or 10 per cent on the average tangibles, the Commissioner has held that the patents acquired by the petitioner from the Maunfacturing Company had no value at the date of acquisition; and accordingly he refused to allow any deduction for the years 1917, 1918, and 1919, for depreciation of these patents, disallowed the depreciation deductions taken by the petitioner in the returns for the years 1920 and 1921 in the amount of $24,371.11 each, and refused to allow any value for the patents for invested capital purposes.

The total depreciation deduction made by the petitioner in the return for 1921 amounted to $73,382.57, made up as follows:

| | |
|---|---:|
| Depreciation on plant and equipment | $811.17 |
| Depreciation on furniture and fixtures | 462.55 |
| Depreciation on patents | 24,371.11 |
| Depreciation on cabinets and filters | 47,737.74 |
| Total | 73,382.57 |

The Commissioner allowed a deduction for depreciation of patents in the amount of $818.92, representing one-thirteenth of $10,646, which he held to be the total cash expended for development of patents, and added back to income the difference between that amount and $24,371.11, or $23,552.19. He further added to the income for this year the sum of $24,371.11, on the ground that the petitioner had deducted two amounts of $24,371.11, each, for depreciation of patents. The petitioner deducted only one amount of $24,371.11, in its return, for depreciation of patents.

OPINION.

MARQUETTE: The first issue concerns the Commissioner's action in twice adding to the net income for the year 1917 the net increase for that year of $958.53 in the reserve for past due and doubtful accounts. The manner in which this net increase in the reserve was made is set out in the findings of fact and need not be repeated here. The revenue agent, in computing taxable net income, used book net income as a starting point and added thereto the sum of $958.53, the amount by which the increase in the reserve which had been taken as a deduction exceeded the total debts ascertained to be worthless and charged off during the year, less total collections on accounts previously charged off as worthless. The Commissioner in computing net income in the deficiency letter, used the net income as computed by the revenue agent as the starting point and again added thereto the net increase in the reserve of $958.53. The Commissioner's action resulted in a duplicate adjustment of income in respect of the same item and was, therefore, erroneous. The net income determined by the Commissioner in the deficiency letter should be reduced by the amount of $958.53.

During all of the years involved in the appeal, the petitioner capitalized the cost of labor, materials, and overhead used in assembling cabinets and filters and in the installation thereof in customers' premises, by charging such cost on its books to cabinet and filter property accounts. The Commissioner held that only the cost of the materials (cabinet and filter parts) used in assembling and installation should be capitalized and that the cost of labor and overhead should be deducted as expense. In accordance with this ruling the

Commissioner reduced the income of the years 1917 and 1918 by the amounts expended in those years for labor and overhead used in assembling and installation. The petitioner, while agreeing with the Commissioner as to the proper accounting treatment of the costs of assembling and installation, complains that the Commissioner has not uniformly applied the same rule in all years, in that he failed to allow as deductions from income of the years 1919, 1920, and 1921, the costs of labor and overhead incurred in those years in assembling and installation. We think the point which the petitioner raises is well taken. If the costs of labor and overhead incurred in assembling and installation are to be treated as deductible expenses, as the parties agree they should be, which, all circumstances considered, we think is in accord with sound accounting principles, they should be uniformly so treated for all years. For the years 1919, 1920, and 1921, the costs of labor and overhead incurred in assembling and installation were $20,109.68, $23,525.17, and $33,385.55, respectively. The Commissioner reduced the income of the years 1920 and 1921 by the amounts of $10,217.40 and $41,353.78, respectively, which he determined to be the amounts capitalized on the books of account by charges to cabinet and filter property accounts in excess of the actual cost of the materials used in making installations in those years. Thus it appears that the Commissioner has allowed a deduction for a part of the cost of labor and overhead incurred in 1920, and for the year 1921 has allowed a deduction for labor and overhead in excess of the actual cost of labor and overhead incurred in that year. The net income determined by the Commissioner for the years 1919 and 1920 should be reduced by the amounts of $20,109.68, and $13,307.77, respectively, and the net income determined by the Commissioner for the year 1921 should be increased by the amount of $7,968.23.

The third issue concerns the Commissioner's action in adding to the income of the years 1917 and 1918 the amounts of $22,424.50 and $29,108.16, respectively, which he held the petitioner had deducted from income as losses sustained through removals of cabinets and filters from customers' premises. The accounting procedure adopted by the petitioner in maintaining the books of account, as it related to removals of cabinets and filters, is set out in detail in the findings of fact. When cabinets and filters were removed from customers' premises, the cabinet and filter property accounts were credited with the original costs of installation. One-half of the credits so made to the cabinet and filter property accounts were charged to filter material account, a capital account, and the other one-half to cabinet and filter operating expense accounts. These charges to cabinet and filter operating expense accounts were, at the

close of the year, transferred to and charged against surplus. No part of the charge made against surplus in 1917 was deducted in arriving at book net income which the revenue agent used as the starting point in computing taxable net income. Of the charge made against surplus in 1918, one-third, or $5,173.89, was deducted by the petitioner in its return. The net income determined by the Commissioner for the years 1917 and 1918 should be reduced by the amounts of $22,424.50 and $23,934.27, respectively.

The fourth issue is that the Commissioner failed to allow as deductions from income, for all of the years involved in the appeal, the losses alleged to have resulted from removals of cabinets and filters from customers' premises. The fact of the matter is that the Commissioner has allowed as deductions from income of the years 1917 and 1918, the amounts of $12,970.19 and $15,521.67, respectively, which are the amounts charged against surplus in those years as losses occasioned by removals. As outlined in our discussion of the third issue, these charges against surplus represented one-half of the cost of installation of the removed cabinets and filters. It is apparent that these charges to surplus represent either the cost of labor and overhead used in installation, or the cost of labor and overhead plus the difference between the cost of the materials and the value at which they were charged back to the filter material account. We have already held, in agreement with the parties, that the cost of labor and overhead used in installation should be charged to expense and not capitalized; hence, no loss is sustained in this respect upon removal of cabinets and filters. Any shrinkage in value occasioned through physical wear and tear of materials while in use should be taken care of through annual deductions for depreciation. It appears, therefore, that the Commissioner erred in allowing these deductions from the income of the years 1917 and 1918. This is admitted by the petitioner in its brief, so far as it concerns the year 1917, but nothing is said therein so far as concerns the year 1918. As for the years 1919, 1920, and 1921, no evidence was adduced to show that the petitioner sustained any losses in those years as the result of removals of cabinets and filters from customers' premises. Of the total deduction of $15,521.67 allowed by the Commissioner for the year 1918, $5,173.89 has been disposed of under the third issue necessitating an adjustment of but $10,347.78 under this issue. The net income determined by the Commissioner for the years 1917 and 1918 should be increased by the amounts of $12,970.19 and $10,347.78, respectively.

The fifth issue concerns the Commissioner's action in adding to the income for the year 1919 an item of $31,336.89, which he held to be the cost of materials used in making installations in that year which

the petitioner deducted as expense. From an examination of certain balance sheets submitted by the petitioner, the Commissioner determined that the net increase in the cabinet and filter property accounts, for the year 1919, amounted to $2,754.08. The Commissioner further determined that the cost of the materials used in making installations during the year was $34,090.97. Since the net increase in the cabinet and filter property accounts was $31,336.89 less than the cost of the materials used in making installations during the year, the Commissioner assumed that the petitioner had deducted this amount from income. The evidence is conclusive that no part of the costs of installations made during the year were deducted from income by the petitioner. Furthermore, the comparison which the Commissioner made of gross cost of materials used with net increase in the property accounts is obviously an erroneous one, since it fails to take into account the fact that the property accounts were credited with the costs of installation, including labor and overhead as well as materials, of removed cabinets and filters. The net income determined by the Commissioner for the year 1919 should be reduced by the amount of $31,336.89.

The sixth issue is that the Commissioner failed to allow adequate deductions from income, for all years involved in the appeal, for depreciation of cabinets and filters installed in customers' premises. The deductions which the Commissioner has allowed represent 10 per cent of the total cost of materials used in making installations to the beginning of each year, plus an additional amount computed at the rate of 5 per cent of the cost of materials used in making installations during each year. The evidence convinces us that the average useful life of petitioner's cabinets and filters does not exceed five years, and that a rate of 20 per cent should be used in computing the depreciation allowance. Because of the numerous changes in the cabinet and filter property accounts during any year, which are occasioned by additional installations, changes, and removals, the base to which this 20 per cent rate should be applied should be determined by adding together the cost of materials actually in use in installed cabinets and filters at the beginning of the year and at the end of the year and dividing the sum thus obtained by two.

The seventh issue concerns the Commissioner's action in refusing to allow deductions for the years 1917, 1918, and 1919, for depreciation of patents acquired at the date of organization, in disallowing the deductions which the petitioner took in the returns for the years 1920 and 1921 for depreciation of these patents, and in refusing to allow any value for these same patents for invested capital purposes. The patents in question were taken over from the United Centadrink Manufacturing Co., one of the predecessor companies.

Since the average annual earnings of that company for the five-year period immediately preceeding the date of organization of petitioner represented a return of less than 8 or 10 per cent upon the average tangible assets for the same period, the Commissioner held that the patents had no value at the date of acquisition, February, 1913, or at March 1, 1913. He accordingly held that the petitioner was not entitled to deductions for depreciation of these patents, and that no value in respect thereof could be included in invested capital. The petitioner contends that because of the close relationship of the United Centadrink Manufacturing Co. and the New York Centadrink Co., and the nature of, and manner in which they carried on their businesses, the Commissioner should have determined upon a value for the patents based upon the combined average annual earnings of the two companies for the five-year period immediately preceding the date of organization of petitioner. All that we have been told about these patents is that there were 18 or 20 of them in number. We know nothing about the inventions covered by these patents, of the stage of development reached at the time they were acquired by the petitioner, of the availability of markets for the products manufactured under them, of the earnings of prior years attributable to them as distinguished from the earnings attributable to good will, of the probabilities as to the earnings which could reasonably be expected during the remaining life of the patents, or of the remaining life of the patents from the date of acquisition. For aught that has been told us, the whole lot of them may have been entirely obsolete. No evidence was introduced relating to their values. In short, we have no evidence before us upon which we can base a finding that these patents had a determinable value at the date of acquisition. Under the circumstances, we can not disturb the action of the Commissioner in refusing to allow deductions from income, for all of the years involved in the appeal, for depreciation of patents acquired from the predecessor companies, and in refusing to allow any value in respect of these patents for invested capital purposes.

The eighth issue concerns the Commissioner's action in twice adding to the income for 1921 the sum of $24,371.11, representing the deduction taken by the petitioner for depreciation of the patents referred to in the seventh issue. The petitioner deducted only one amount of $24,371.11, in its return, for depreciation of patents; hence, the Commissioner's action in twice adding this item to income is in error. The net income determined by the Commissioner for the year 1921 should be reduced by the amount of $24,371.11.

The ninth issue is that the Commissioner failed to give credit in computing the deficiency for the year 1917, for the additional tax

of $381.08 assessed for that year and paid on July 25, 1923. No evidence was submitted in connection with this issue; hence, we are unable to make any finding in respect thereof.

> *Judgment will be entered on 15 days' notice, under Rule 50.*