## COLONY COAL & COKE CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.

## HAZARD COAL CORPORATION v. SAME.

### · Nos. 3169, 3170.

Circuit Court of Appeals, Fourth Circuit.
Oct. 12, 1931.

Lewis A. Nuckols, of Roanoke, Va., for petitioners.

Randolph C. Shaw, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Wm. Cutler Thompson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Nathan Gammon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

### PER CURIAM.

These are petitions to review decisions of the United States Board of Tax Appeals, which decisions are reported in 20 B. T. A. 326.

Both petitioners were corporations engaged in the business of owning and leasing coal properties in Perry county, Ky. In the year 1917 they, with another corporation, entered into an arrangement with the Louisville & Nashville Railroad Company to build a branch line of railroad to connect the properties owned by them with the line of that railroad.

The railroad line was built, and a controversy arose as to the amount the coal companies should pay the railroad company for its construction.

Suit was brought, and as a compromise the three companies paid the railroad company $22,666.67 each in settlement. The suit was dismissed by the railroad company.

Petitioners, in making their income tax returns for the year in which the payments were made (1923), claimed the sums paid as a business expense or loss not otherwise accounted for under the Revenue Act of 1921 (chapter 136, 42 Stat. 227). With such deduction the year 1923 still showed a loss in petitioner's operation, and the balance was claimed as a deduction in the year 1924.

The Commissioner of Internal Revenue disallowed the claimed deductions, and held that the payments were capital outlays, amortizable over a period of forty years, that being the estimated productive life of petitioners' coal properties, and allowed deductions therefor on that basis.

From this action of the Commissioner petitioners appealed to the Board of Tax Appeals, which Board approved the deficiencies as determined by Commissioner. The coal companies then filed these petitions to review the decisions of the Board.

The sole question involved is whether the payments made by petitioners to the railroad company were capital or business expenditures.

This case comes clearly under the rule laid down by this court in Gauley Mountain Coal Co. v. Commissioner, 23 F.(2d) 574, 577, where, under a like state of facts, the ex-

penditure was held to be a capital one. In that case Judge Parker said:

"* * * We do not think that what was acquired * * * was a mere transitory service, nor a mere intangible increase in the value of property, * * * but was a right of permanent value to the Company operating the mining property, and one which added greatly to the value of the property itself. Before the branch line was built, the mines of the taxpayer were 4 miles away from a line of railroad, and for that reason could not be operated profitably. As a result of its construction, and the railroad connection thereby acquired, the facilities of a great railway system have been brought to the mines of the company, and this has done away with the necessity of transporting the coal to the line of the railroad.

"The taxpayer has acquired property of permanent value in the same sense as does a manufacturing corporation which pays a railroad company to build an industrial siding to its plant, or a land development company which pays a bonus to a street railway company to build a line through its property. Whether the rights acquired as a result of the railroad connection obtained are to be defined as tangible or intangible property, it is not necessary to inquire. Intangible property, which enables a taxpayer to save or earn money, is as legitimate a form of capital investment as tangible property. Thus money spent in building up the circulation of a newspaper has been held to be capital invested, within the meaning of the taxing acts. * * * The railroad connection itself is quite tangible, the rights flowing therefrom are intangible; but, whether tangible or intangible, the connection and the rights incident thereto are of great value to the taxpayer, and save it many thousands of dollars annually in marketing its coal. * * *

"It is said that, because the track of the branch line is the property of the railroad, and no time is specified by the contract during which the railroad shall continue furnishing service over same, the taxpayer has received no property, tangible or intangible, for the expenditure it has made. But the important thing to the taxpayer is, not the ownership of the track, but the fact that by means of it is furnished the railroad connection desired. In the case of industrial sidings, just adverted to, the track is generally the property of the railroad.

"Nor is it important, we think, that the contract specifies no time during which the connection and the service incident thereto shall be maintained. As a practical matter, now that the branch line has been built, the connection will be maintained and the service furnished without reference to the contract. The railroad is in the business of hauling coal, and may be relied upon from motives of self-interest to continue to haul the coal from taxpayer's mines so long as it is profitable to do so. * * *

"It is clear that, although the track does not belong to the taxpayer, and the contract does not provide a specific period during which the service over it shall be continued, nevertheless the laying of the track and the railroad connection resulting therefrom established for the taxpayer a relationship with the railroad of mutual advantage and of great and continuing value to the taxpayer."

This reasoning so clearly fits the question to be decided here that we can add nothing to it.

It is contended on behalf of the petitioners that because any liability on the part of the coal companies to the railroad was denied, and the payments only made by way of compromise to avoid litigation, they constituted expense and not capital expenditures. We think not. The fact that a payment is made voluntarily or involuntarily, in the course of legal proceedings or as a result of a compromise settlement, does not change the nature of the transaction. The real test is the character of the transaction that occasions the payment.

The action of the Board of Tax Appeals is affirmed.