FALL RIVER GAS APPLIANCE COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

FALL RIVER GAS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3560–62, 3561–62. Filed August 6, 1964.

*John J. Conroy,* for the petitioners.
*Lawrence A. Wright,* for the respondent.

Citing *Suckow Borax Mines Consolidated, Inc.,* a Memorandum Opinion of this Court.

OPINION

RAUM, *Judge:* 1. *Appliance company's 1957 cost of installing leased appliances.*—In 1957 the appliance company incurred various costs in connection with its sales and leases of gas appliances. As to sales, it had "selling expenses" of $8,847.50, "miscellaneous expenses" of $9,132.36, and "installation expenses" of $57,677.55. The Commissioner allowed the deductions of all of these expenses, and they are

not involved herein. The appliance company, however, claimed a further deduction in the amount of $21,035.76 as "installation" expenses in respect of its *leased* gas appliances, which the Commissioner disallowed. We hold that he correctly disapproved that deduction, that the expenditures for the installation of *leased* appliances are capital in nature and should be recouped in the form of depreciation over the estimated useful life of the installations, i.e., over the period that the installations will be used in conjunction with the company's leased appliances.

The appliance company was in the business of both selling and leasing appliances. In relation to sales, its expenditures were related to closed transactions and were a proper charge at once against the income realized from such transactions. The situation in respect of leases is quite different. Notwithstanding that some leases were at will and others for an initial period of only 1 year, it was plainly anticipated that the leases would continue over extensive periods during which the installations would serve the leased equipment. The leases were productive of rentals to the appliance company throughout the time that the consumers used the leased appliances, and the cost of installing the appliances was clearly capital in nature, a charge against those rentals over their anticipated life, to be taken in the form of annual amortization or depreciation deductions, and not as a single expense deduction in 1 year.

We reject the appliance company's contention that since the installations were basically an improvement to the customer's real estate with little or no salvage value to it the cost of installation must be treated as a current expense. It has long been held that the cost of an improvement which results in an economic benefit or advantage to a taxpayer's business extending beyond the taxable year is a capital expenditure even though title to the improvement may be vested in another. *Kauai Terminal, Ltd.*, 36 B.T.A. 893; 47 B.T.A. 523; *Colony Coal & Coke Corp.* v. *Commissioner*, 52 F. 2d 923 (C.A. 4), affirming 20 B.T.A. 326; *Cripple Creek Coal Co.* v. *Commissioner*, 63 F. 2d 829 (C.A. 7), affirming 24 B.T.A. 1096; *D. Loveman & Son Export Corp.*, 34 T.C., 777, 806–807, affirmed 296 F. 2d 732 (C.A. 6), certiorari denied, 369 U.S. 860. These cases govern here, rather than *Centadrink Filters Co., Inc.*, 6 B.T.A. 662, relied upon by the taxpayer, which is distinguishable on its unusual facts and which does not appear to have been cited in any subsequent opinion up to the present time.

Even though title to the installations, consisting primarily of piping, may have passed to the owner of the building when they were made, the prospect that the company would realize rental income from the leased appliances over a prolonged period continued. While it is true that leases of hot water heaters could be terminated after 1 year and conversion burners at any time, the leases did not preclude the

lessees from continuing to rent the appliances as long as they desired to do so, and it was plainly expected that on the whole they would continue to do so over a substantial period of time. To be sure, a number of leases would terminate at a comparatively early time, but the company could reasonably anticipate that in some cases the new tenant would take over the rental of the appliance without removal, and even where it was removed it could be reinstalled for a new tenant, at least in respect of the water heaters, with only nominal expense. Nevertheless, the figures in evidence relating to removals do support the company's position to a limited extent, but they tend to prove merely that the composite life of 20 years which the Commissioner has assigned to the installations is too long. If anything, they more than establish that the useful life of the installations as a whole is far in excess of 1 year, although probably less than 20 years.

Since we approve the Commissioner's position that the installation costs of leased appliances must be capitalized and since we disapprove of the 20-year life that he has determined, it becomes necessary to make a finding as to useful life. The materials in the record do not enable us to arrive at any scientifically accurate conclusion in this respect, but doing the best we can with the evidence before us we have found as a fact that the installations in question had a useful life of 12 years in conjunction with the leased appliances. Accordingly, the company's 1957 installation costs in issue should be spread over that period.

2. *Gas company's deductions, 1958 and 1959.*—For the years 1958 and 1959 expenditures in connection with appliances sold or leased by the appliance company were claimed as deductions by its parent, the gas company, as follows:

|  | 1958 | 1959 |
|---|---|---|
| (i) Delivery expenses (appliances sold) | $11, 908. 08 | $9, 434. 56 |
| (ii) Installation costs (appliances sold) | 36, 000. 00 | 30, 000. 00 |
| (iii) Installation costs (appliances leased) | 124, 822. 95 | 112, 284. 92 |
| (iv) Selling expenses (appliances sold) | 10, 120. 80 | 8, 631. 44 |
|  | 182, 851. 83 | 160, 350. 92 |

The Commissioner disallowed these deductions in toto, capitalized the amounts involved, and allowed depreciation deductions for each of the years based on the capitalized amounts.

Items (i), (ii), and (iv), relating to appliances *sold*, are substantially identical in character with corresponding deductions in different amounts claimed by the appliance company in 1957 which the Commissioner allowed, and item (iii), relating to appliances leased, is of the same character as the expenditures of the appliance company in 1957 dealt with in 1, *supra.*

(a) The Commissioner does not dispute the fact that if the costs incurred in items (i), (ii), and (iv) had been paid by the appliance

company rather than by the gas company, they would be deductible as expenses by the appliance company. We hold that in the circumstances of this case the gas company is entitled to a deduction in respect of its payment of these expenses.[1]

Ordinarily, the separate corporate identities of parent and subsidiary preclude the parent from deducting expenses incurred or losses sustained by its subsidiary. The theory is that the payment by the parent to cover such expenses or losses is related to the business of the subsidiary and not to its own business. *Interstate Transit Lines* v. *Commissioner*, 319 U.S. 590. Accordingly, if this were the usual situation of a parent paying expenses of its subsidiary, the deduction would have to be disallowed. For a recent example, see *Columbian Rope Co.*, 42 T.C. 800 (portions of salaries of certain employees of subsidiary paid by parent). However, the situation here is different. The gas company had a substantial interest in increasing *its own* sales of gas, and the expenses paid by it were intended to promote its own business wholly apart from that of the subsidiary. This distinction was explicitly noted in *Interstate Transit Lines*, *supra* at 594, and was regarded as pivotal by this Court in *Fishing Tackle Products Co.*, 27 T.C. 638, 644. We think that the expenditures involved in items (i), (ii), and (iv) which would have the quality of deductible expenses if made by the subsidiary, are similarly deductible by the parent when paid by the parent [2] because directly related to its business, and need not be capitalized under *Houston Natural Gas Corp.* v. *Commissioner*, 90 F. 2d 814 (C.A. 4), as contended by the Government.

(b) As to the installation costs of leased appliances, referred to herein as item (iii), we have held above that expenditures for this

---

[1] This holding is subject to the condition that the parent actually paid these amounts. See footnote 2, *infra*.

[2] Whether the expenses reflected in items (i), (ii), and (iv) were in fact paid by the parent or by the subsidiary is not clearly established. As to 1958, for example, the subsidiary claimed and was allowed on its return deductions identified as "Installation expense—Appliances" in the amount of $47,908.08 and "Selling expenses" in the amount of $10,120.80. But items (i) and (ii), above, in the case of the parent add up to precisely $47,908.08, and item (iv) is precisely equal to $10,120.80. Thus, it would seem possible that items (i), (ii), and (iv) reflected in the parent's 1958 return are duplications of identical deductions taken on the subsidiary's 1958 return. If they are duplications, they are obviously deductible by only one of the taxpayers. Since both taxpayers are before us, we will leave it to the parties to agree among themselves under Rule 50 as to which corporation in fact paid these expenses and which is therefore entitled to the deductions. Of course, it is possible that the expenses were in fact twice the amounts involved and that each corporation paid one-half thereof. However, since all the pertinent facts are not before us, and since there seems to be a possible duplication, the parties may clarify the matter by stipulation. The decisions to be entered under Rule 50 should reflect the facts as thus clarified.

The same situation prevails as to 1959. The subsidiary deducted $39,434.56 as "Delivery and Installation Expenses," an amount equal precisely to the sum of items (i) and (ii) deducted by the parent as "Delivery Expenses (Appliances Sold)" and "Installation Costs: Appliances Sold." And the subsidiary also deducted $8,631.44 as "Selling Expenses," an amount equal precisely to item (iv) deducted by the parent as "Selling Expenses (Appliances Sold)." The Court similarly expects the parties to clarify this situation in connection with the decisions to be entered under Rule 50.

purpose by the appliance company must be capitalized and depreciated over a 12-year period. We see no compelling reason for a more favorable result in behalf of the parent company where it makes the expenditure instead of the subsidiary.[3] Indeed it might even be urged that the payments by the parent merely increased its capital investment in the subsidiary's stock with the consequence that no depreciation whatever would be allowable in respect thereof; however, no such issue was raised and we do not pass upon it.

*Decisions will be entered under Rule 50.*

---

[3] The situation is, of course, distinguishable from the payments involved in (a), *supra*, where we held that expenses of the subsidiary paid by the parent are deductible by the latter because related to its own business. The payments here are similarly related to the parent's business, but they are capital in nature and therefore not deductible as expenses. Thus, the owner of a department store may install air conditioning incurring an expense directly related to his business, which must nevertheless be capitalized rather than taken as a current expense.