BEATRICE DAVIS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Davis v. Commissioner
Docket No. 10525-76.
United States Tax Court
T.C. Memo 1978-12; 1978 Tax Ct. Memo LEXIS 501; 37 T.C.M. (CCH) 42; T.C.M. (RIA) 780012; January 12, 1978, Filed Beatrice Davis, pro se. R. Dale Eggleston, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined a deficiency of $4,805.25 in petitioner's Federal income tax for the year 1974. Concessions were made by the respondent. The issues remaining for our decision are: (1) Whether severance pay sent to petitioner in 1974 by certified mail, return receipt requested was constructively received by her in that year. (2) Whether petitioner's disbursements for the purchase and installation of a furnace boiler and a water heater for rental property may be expensed and, if not, what are the useful lives of the boiler and heater. FINDINGS OF FACT Many of the facts have been stipulated and are found accordingly. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Beatrice Davis (petitioner) resided in Baltimore, Maryland, at the time the petition was filed in this case. Petitioner filed her *503 Federal income tax return for the calendar year 1974 on the cash receipts and disbursements method of accounting. Petitioner began working for The Chesapeake and Ohio Railway Co. (hereinafter referred to as the Railway) on July 14, 1965. On November 22, 1974, the Railway merged two offices and petitioner's employment was adversely affected. Rather than accepting another position with the Railway, petitioner elected to take severance pay [1] of $17,006.48. Petitioner was told by the Railway that two months were necessary to process the severance pay and that she would not receive it before 1975. In late December, [2] however, the Railway in accordance with its standard procedure mailed to petitioner her severance pay via certified mail, return receipt requested. A postal employee attempted to deliver the certified letter on December 31, 1974. Since petitioner was not at home, the postal employee left a notice which stated that the letter could be picked up at the Gwynn Oak Post Office Branch after three o'clock p.m. that day. *504 Petitioner returned home after five o'clock p.m., at which time the branch post office was closed. She did not pick up the certified mail until January 2, 1975, when the branch post office reopened. Although she expected the letter to be a notification of an increase in her rent, she discovered it to be her severance pay. Included in the envelope was a covering letter and vouchers for a net amount of $12,650.31.The Railway included the severance pay in petitioner's 1974 Form W-2, but petitioner excluded the gross amount of $17,006.48 from her 1974 return and attached an explanatory note. [3]
Petitioner owns investment rental properties in Baltimore which are located at 4005 Norfolk Avenue and 3517 Lucille Avenue. On December 4, 1974, petitioner replaced a defective boiler, which is a part in the furnace in her Norfolk Avenue property. The price of the boiler was *505 $682.60; tax was $27.40; installation and labor charge was $325. The petitioner was allowed a credit of $69.37 against the price of the boiler under the terms of a 20 year guarantee on the old boiler which petitioner had purchased in 1961. The aggregate cost exclusive of tax was $938.23. The new boiler was guaranteed for a period of one year against defects in material or workmanship. In February 1975, the new boiler required numerous repairs and then stopped working altogether.On March 4, 1975, the new boiler was replaced free of charge under the terms of the guarantee. Although the final replacement boiler required several service calls, it was still in service at the time of the trial of this case in October 1977. On July 26, 1974, petitioner replaced a seven year old gas hot water heater in her Lucille Avenue property. The cost of the new hot water heater was $59.88; the valves were $10.77; labor and plumbing charge was $50; and miscellaneous handling was $2.83, for a total of $123.48. The hot water heater was guaranteed against leakage for a period of five years. The valves were guaranteed for one year. The new hot water heater was still in operation at the time of *506 the trial in this case in October 1977. On her 1974 return petitioner deducted the entire cost of replacing the furnace boiler and the water heater. In the notice of deficiency respondent disallowed the expense deductions. In recomputing petitioner's taxable income, respondent determined that a deduction for water heater depreciation based on a five year useful life was allowable, but allowed no depreciation deduction for the furnace boiler. ULTIMATE FINDINGS OF FACT 1.The severance pay was not actually or constructively received by petitioner in 1974. 2. The expected useful life of the furnace boiler purchased by petitioner for her Norfolk Avenue property is twelve years. 3. The expected useful life of the hot water heater purchased by petitioner for her Lucille Avenue property is five years. OPINION The first issue for decision is whether petitioner constructively received her severance pay in 1974. The evidentiary facts related to this issue are not disputed. Although petitioner did not expect to receive the severance pay until 1975, the Railway mailed it to her in late December via certified mail, return receipt requested. A postal employee attempted delivery *507 on December 31, 1974, but petitioner was not at home. Petitioner arrived home after the post office had closed and she saw the notice of attempted delivery of certified mail which she expected to be a notice of increase in her rent. Petitioner picked up the letter when the post office reopened on January 2, 1975, and discovered the certified mail to be her severance pay. Respondent contends that petitioner constructively received the pay in 1974 since the severance payment was unqualifiedly committed to petitioner on December 31, 1974, and the checks were made available to petitioner at the post office after three o'clock p.m. on the same date. Petitioner argues, on the other hand, that there was no constructive receipt since the check was mailed in the ordinary course of business, was not actually received until 1975, and was not intentionally delayed in transit by petitioner. We agree with petitioner. [4]
*508 The Federal income tax is based on a computation period which is the taxable year. Section 451(a)[5] provides the general rule that "any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period." Since petitioner is on the cash receipts and disbursements method based on a calendar taxable year of accounting, income is taxable to her in the year the item is actually or constructively received. Sections 1.446-1(c)(1)(i), and 1.451-1(a), Income Tax Regs. Petitioner did not actually receive the severance pay in 1974, so the issue is whether she constructively received it in that year.
The doctrine of constructive receipt is based on the principle that income is received or realized by cash method taxpayers "when it is made subject to the will and control of the taxpayer and can be, except for his own action or inaction, reduced to actual *509 possession." Loose v. United States,74 F.2d 147, 150 (8th Cir. 1934), affg. 4 F. Supp. 375(W.D. Mo. 1933). The regulations provide that: Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. [Section 1.451-2(a), Income Tax Regs.] Although these general principles are well-settled and easily stated, each case necessarily turns on its facts and the doctrine of constructive receipt should be applied sparingly. Thomas v. Commissioner,44 B.T.A. 735, 738 (1941); Gullett v. Commissioner,31 B.T.A. 1067, 1069 (1935); Adams v. Commissioner,20 B.T.A. 243, 245-46 (1930), affd. *510 54 F.2d 228(1st Cir. 1931). "It is only in unique circumstances and a clear case that the invoking of this doctrine will be approved." Roach v. Commissioner,20 B.T.A. 919, 925 (1930). The facts of petitioner's situation here do not present such a case. Respondent is correct in his contention that the Railway had unqualifiedly committed the funds to petitioner by December 31, 1974, but such a commitment is not sufficient in itself to cause constructive receipt. The funds must be made available to the taxpayer without substantial limitations, Section 1.451-2(a), Income Tax Regs. Implicit in availability is notice to the taxpayer that the funds are subject to his will and control. Such notice is lacking here. Petitioner had no expectation that she would receive the payment in 1974.The Railway had told her it would take months to process her severance pay and that she would not receive the checks until 1975.We see no reason to charge her with constructive receipt simply because she received a notice of attempted delivery of certified mail on December 31, 1974. Petitioner had no inkling that the certified mail was her severance pay; she thought it was *511 a notice of rent increase. Receipt for tax purposes did not effectively occur until January 2, 1975, at which time petitioner actually received the letter and discovered it to be her pay. Respondent argues that petitioner should be charged with constructive receipt since she would have actually received the payment in 1974 but for the fact that she chose not to be at home on December 31, 1974. We find this argument unpersuasive. It is true that case law has consistently held that any delay in receipt, any substantial limitation or any restriction cannot be of the taxpayer's unilateral making. See, e.g., Romine v. Commissioner, 25 T.C. 859, 873-75 (1956); Frank v. Commissioner, 22 T.C. 945, 952-53 (1954), affd. 226 F.2d 600 (6th Cir. 1955); Kunze v. Commissioner, 19 T.C. 29, 31-32 (1952), affd. 203 F.2d 957 (2d Cir. 1953). Those cases, however, dealt with situations where the taxpayer knew he could have receipt in the earlier year and took steps specifically designed to prevent actual receipt. The error in respondent's logic lies in equating petitioner's choice to be absent from home with a conscious *512 choice not to receive the severance pay until the following year. In fact, petitioner's absence here was not procured to prevent actual receipt. Under these circumstances [6] application of the doctrine of constructive receipt is inappropriate. "[In] general, income should not be construed to have been received prior to the date of actual receipt except where a taxpayer turns his back upon income or does not choose to receive income which he could have if he chose." Adams v. Commissioner, supra at 246. Respondent's reliance on McEuen v. Commissioner, 196 F.2d 127 (5th Cir. 1952), revg. a Memorandum Opinion of this Court; *513 Loose v. United States, supra; and Kahler v. Commissioner, 18 T.C. 31 (1952), is misplaced. In the McEuen case the Fifth Circuit concluded that, although not actually received until 1944, a check mailed to the taxpayer at his request in 1943 was constructively received in the year of request. The holding turned on the fact that the payment was at the direction of the taxpayer and the taxpayer could have picked up the check personally but for the geographical distance separating him from the payor. In the instant case the payment time was not subject to petitioner's direction. Furthermore, there is no indication that petitioner could have picked up the check in person; the normal procedure for the Railway was to mail the severance pay after processing the claim. In Loose v. United States, supra, constructive receipt was found despite the fact that the taxpayer had suffered a stroke which rendered him unable to personally avail himself of actual receipt. Loose is distinguishable from the instant case, however, since there the taxpayer had actual notice of the availability of the income via the cashing of interest *514 coupons which already were in the taxpayer's possession. Moreover, his wife had a power of attorney for access to the coupons and apparently could have cashed them except for her desire to stay with her ill husband. Here petitioner had no actual knowledge or expectation that the income would be available to her in 1974. Respondent cites Kahler, supra, for the proposition that constructive receipt may be found despite no expectation of income in the earlier year. In Kahler, however, although the taxpayer did not expect to receive the check, he actually received it sometime after five p.m. on December 31 of the earlier year. Petitioner here had no actual receipt until 1975. Kahler is therefore inapposite. In our judgment the facts in the instant case are inappropriate for the application of the doctrine of constructive receipt. Accordingly, we hold that the severance pay is not taxable to petitioner in the calendar year 1974. The second issue for our decision concerns petitioner's disbursements for the purchase and installation of a furnace boiler and a water heater. Respondent argues [7] that these disbursements were capital in nature since the *515 boiler and water heater had useful lives of twelve and five years respectively. Petitioner argues that the proper treatment for these disbursements is full deduction as current expenses. We agree with respondent. An item is a capital expenditure which may not be deducted in full currently if it has a useful life of more than one year. Sections 1.263(a)-1, and 1.263(a)-2, Income Tax Regs. The burden of proof is on petitioner to overcome respondent's determination that the purchase and installation of the furnace and water heater were capital expenditures. Challenge Manufacturing Co. v. Commissioner, 37 T.C. 650, 662 (1962); Rule 142(a), Tax Court Rules of Practice and Procudure. Petitioner failed to meet this burden.
The useful life of an asset "is the period over which the asset may reasonably be expected to be useful to the taxpayer in his trade or business or in the production of his income." Section 1.167(a)-1(b), Income Tax Regs. The evidence *516 in this record is insufficient to conclude that respondent erred in his determination of the useful lives of the furnace boiler and the water heater. [8] Petitioner's history with previous appliances included useful lives of eleven years for the old boiler and of seven years for the old water heater. These figures are comparable to respondent's determinations. Petitioner has offered no proof that industry averages are less than the figures for useful lives determined by respondent here. Instead, petitioner relies on the much shorter (one year) warranty for the new appliances as an indication of useful life. The length of a warranty, however, has little or no bearing on the useful life of an asset. Furthermore, although the furnace boiler malfunctioned in the first year it was replaced free of charge under the terms of the warranty. Under these circumstances we are not prepared to say respondent erred in his determination. *517 We also disagree with petitioner's contention that the installation charges should be expensed. Disbursements for installing a capital item are themselves capital in nature and must be depreciated over the life of the asset. See Fall River Gas Appliance Co. v. Commissioner, 42 T.C. 850, 855-57 (1964), affd. 349 F.2d 515 (1st Cir. 1965); Rankin v. Commissioner, 17 B.T.A. 1301, 1308 (1929), affd. in part and revd. in part 60 F.2d 76 (6th Cir. 1932), Accordingly, we hold that the disbursements for the purchase and installation of the furnace boiler and water heater were capital expenditures for assets with useful lives of twelve and five years respectively. To reflect the concessions made by the respondent and our conclusions on the disputed issues, Decision will be entered under Rule 155. Footnotes
1. Under the union agreement petitioner was entitled to her daily rate of pay of $45.23 for 376 days, which included 16 vacation days.↩
2. The envelope containing the severance pay was postmarked December 30, 1974.↩
3. On January 6, 1975, petitioner applied for a ruling on this issue from the Internal Revenue Service but did not receive respondent's adverse written ruling until after she had filed her 1974 return. Apparently petitioner's circumstances became the subject of Revenue Ruling 76-3, 1976-1 C.B. 114↩.
4. Petitioner raises an alternative argument with which we disagree. Petitioner argues that inclusion of the severance pay in 1974 would materially distort her income for that year since the pay represents one year of pay, computed from her date of separation on November 22, 1974. We reject this argument. A taxpayer on the cash receipts and disbursemnts method must include compensation in the year actually or constructively received, regardless of the period in which the services were actually rendered, Lavery v. Commissioner,5 T.C. 1283, 1288-89 (1945), affd. 158 F.2d 859 (7th Cir. 1946). This rule applies by analogy to petitioner's case. The concept of clear reflection of income has its origin in a specific statutory grant of power to the Commissioner of Internal Revenue to change a taxpayer's method of accounting if necessary to clearly reflect income Sec. 446(b), I.R.C. 1954. Although a taxpayer may resist a change sought by the Commissioner by arguing that under the taxpayer's method there is clear reflection of income, see, e.g., Auburn Packing Co. v. Commissioner,60 T.C. 794 (1973); Fort Howard Paper Co. v. Commissioner,49 T.C. 275↩ (1967), a taxpayer may not affirmatively assert the doctrine, if the Commissioner is merely seeking inclusion under the method previously adopted by the taxpayer.Since petitioner uses the cash receipts and disbursements method, the issue for our decision is only whether under that method the pay was constructively received in 1974.
5. Unless specified otherwise, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue.↩
6. Much of respondent's argument is devoted to hypotheticals with extreme variations of the facts in the instant case.Although such hypotheticals sometimes help to place things in perspective, we find them to be little aid in our determination here. In any event, our holding is limited to the facts of petitioner's case and we will refrain from exploring the factual variations posed by respondent until such time as they are embodied in an actual case before this Court.↩
7. On brief, respondent concedes that he erred in his determination of no allowable deduction in 1974 for depreciation for the boiler under section 167 and for sales tax of $27.40 for the boiler under section 164.↩
8. Although we found petitioner to be a credible witness, her testimony indicates that she was not particularly knowledgeable as to the mechanics or construction of the furnace boiler. For this reason we discount her testimony that, unlike the original boiler, the components of the replacement boiler could not be replaced and it therefore has a shorter useful life. The other evidence of record provides insufficient information for us to conclude that the new boiler necessarily would have a useful life shorter than the twelve year life determined by respondent, which figure is close to the actual eleven year life of the initial boiler.↩