Order enforced.

## ROBERTSON v. STEELE'S MILLS et al.

### No. 5823.

United States Court of Appeals
Fourth Circuit.

Feb. 11, 1949.

Harry Baum, Sp. Asst. to Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Bryce R. Holt, U. S. Atty., of Greensboro, N. C., on the brief), for appellant.

John M. Robinson and Hunter M. Jones, both of Charlotte, N. C. (R. M. Robinson of Greensboro, N. C., on the brief), for appellees.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

Plaintiffs instituted a civil action in the United States District Court for the Middle District of North Carolina to recover income and excess profits taxes for the year 1941, paid under protest and alleged to have been illegally assessed and illegally collected. The District Judge, sitting without a jury, decided the case in favor of the plaintiffs and the defendant has duly appealed.

There is practically no dispute as to the basic facts, which we proceed to summarize.

The taxpayer corporation, Steele's Mills, a manufacturer of cotton textile products, maintained its plant in a remote North Carolina village with a population of 1,500 made up of taxpayer's 500 employees and their families. The scale of wages in the industry was comparatively low, and for many years prior to the taxable year (1941) it had been taxpayer's policy to aid its employees in financial emergencies by extending credit at the corporation's store and for medical and hospital expenses. This policy built employee good will and reduced labor turnover. The credits thus extended to the employees were collected through payroll deductions. After adoption of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., which prevented collection of employee accounts through payroll deductions, this practice was discontinued.

On December 30, 1941, taxpayer executed a trust agreement and on the same day turned over to the trustee-bank, Wachovia

Bank & Trust Company, $28,610 in cash and bonds. The trust agreement stated that its purpose was the "furtherance and strengthening of the loyalty and good will" of taxpayer's employees. The trust fund was to be used in the discretion of a committee to make loans (not exceeding $100) at 6% interest to employees who had been in taxpayer's employ at least one year preceding their request for benefits, or to their dependents; and the committee in its discretion could convert any loan into a "donation." Any employee leaving taxpayer's employ was to "forfeit" all benefits in the fund. Collections of loans were to be made through taxpayer's payroll. Expenditures of the trust fund were not to exceed in any one year the trust income for that year plus 5% of the original principal, except with the taxpayer's written approval; at no time were loans to employees to exceed 20% of the original principal; and no expenditure (except for administration expenses) could be made within one year of the creation of the trust, except in an emergency declared by the committee. The members of the committee, according to the testimony of taxpayer's president, were taxpayer's secretary and five of its executive employees.

The trust was to continue for twenty years unless sooner terminated by taxpayer. At the termination of the trust, the fund then on hand was to be distributed to such of taxpayer's employees who "shall have had at least five years continuous service with the Grantor (taxpayer) immediately preceding the termination of the trust," and who were considered by the committee as most deserving on the basis of services and wages. Taxpayer reserved the right at any time to amend the trust agreement, except to revert in itself any of the trust fund, and reserved the right at any time upon written notice to remove the trustee, or any member of the committee, and to appoint successors. It also reserved the privilege, but did not obligate itself, to increase the trust fund.

The wages paid by taxpayer in 1941 totaled about $437,000, or an average of about $875 for each of its 500 employees. The trust fund represented slightly more than 6% of taxpayer's total labor cost for the year, and about 5% of its net profits before income taxes.

In its 1941 return taxpayer deducted the entire amount of the trust fund from its gross income for that year. After the Commissioner disallowed the deduction, the trust agreement was amended by an instrument executed December 10, 1943. This amendment provided that the trust was to defray any taxes due from taxpayer by reason of the Commissioner's disallowance of the claimed deduction, as well as the costs incurred by taxpayer in seeking recovery of the taxes paid. In 1944 taxpayer paid the deficiency ($22,257) by check of the trustee. Thereafter taxpayer duly filed a claim for refund, which was denied, and then instituted this civil action for refund in the District Court.

The uncontradicted testimony of taxpayer's president shows that (1) the trust has never functioned in any way, and up to the date of the trial "no employee has obtained any benefits whatever from it"; (2) taxpayer's purpose in creating the trust was to "provide in prosperous years for lean years."

The District Court held that the trust fund was deductible from taxpayer's 1941 gross income under Section 23(a) of the Internal Revenue Code, 26 U.S.C.A. § 23(a), as an ordinary and necessary expense of carrying on taxpayer's business in that year. The District Judge filed a brief memorandum opinion indicating that his disposition of this case was controlled as a matter of law by Lincoln Electric Co. v. Commissioner, 6 Cir., 162 F.2d 379, rather than by Roberts Filter Manufacturing Co. v. Commissioner, 10 T.C. 26, pending on petition for review in the Court of Appeals for the Third Circuit.

Section 23 of the Internal Revenue Code, 26 U.S.C.A. § 23, provides in part:

"Deductions from gross income. In computing net income there shall be allowed as deductions:

"(a) Expenses.

"(1) Trade or business expenses.

"(A) In general. All the ordinary and necessary expenses paid or incurred during

the taxable year in carrying on any trade or business * * *."

And 26 U.S.C.A. § 24, provides in part: "Items not deductible.

"(a) General rule. In computing net income no deduction shall in any case be allowed in respect of.

* * * * * *

"(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate * * *."

The question presented for decision by us, then, is: Whether this trust fund, created by taxpayer-employer at the close of the taxable year 1941, which was to be disbursed over the 20-year period of the trust for the benefit of the employees of taxpayer, was a current operating expense of taxpayer's business deductible from its 1941 gross income under Section 23(a) of the Internal Revenue Code.

The cases construing and applying § 23 (a) are indeed legion. Mr. Justice Frankfurter ended his opinion in McDonald v. Commissioner, 323 U.S. 57, 65, 65 S.Ct. 96, 99, 89 L.Ed. 68, 155 A.L.R. 119, by characterizing them as a "quagmire of particularities." Certainly these cases set forth no clear criteria of easy and universal application. The generality of the statutory terms and the Protean complexities of modern industry preclude so favorable an hypothesis. Perhaps the best that can be said is that these decisions shed some light to aid the judicial mariner in setting his course on these perilous seas. So some discussion of the decided cases is manifestly in order.

Though the facts in the three cases are not identical, we think these cases are so similar that the same result should be reached in the instant case, in the Roberts Filter case and the Lincoln Electric case. Judge Arnold recognized the similarity between the Roberts Filter case and the Lincoln Electric case and, speaking for the Tax Court in the former case, flatly refused to follow the opinion of Judge Simons, speaking for the Circuit Court of Appeals for the Sixth Circuit, in the latter case. We prefer the reasoning in the Roberts Filter case as conforming more closely to that economic reality which is often said to be the very essence of tax legislation. We, therefore, think the judgment of the District Court in the instant case must be reversed.

In McDonald v. Commissioner, 323 U. S. 57, 65 S.Ct. 96, 89 L.Ed. 68, 155 A.L.R. 119, the Supreme Court disallowed, under the statute in question, campaign contributions made in a single year by one who was runing for election as judge. Said Mr. Justice Frankfurter, 323 U. S. at pages 59, 60, 65 S.Ct. at page 97: "He was therefore entitled to deduct from his gross income all the 'ordinary and necessary expenses' paid during 1939 in carrying on that 'trade or business.' He could, that is, deduct all expenses that related to the discharge of his functions as a judge. But his campaign contributions were not expenses incurred in being a judge but *in trying to be a judge for the next ten years.*" (Italic ours.)

A like result was reached in Welch v. Helvering, Commissioner, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212, involving payments on the debts of a corporation, made by its former officer after its discharge in bankruptcy and for the purpose of strengthening his own business standing and credit. Said Mr. Justice Cardozo in this case, 290 U. S. at page 113, 54 S.Ct. at page 9: "We may assume that the payments to creditors of the Welch Company were necessary for the development of the petitioner's business, at least in the sense that they were appropriate and helpful. McCullogh v. Maryland, 4 Wheat. 316, 4 L.Ed. 579. He certainly thought they were, and we should be slow to override his judgment. But the problem is not solved when the payments are characterized as necessary. Many necessary payments are charges upon capital."

See, also, the cases cited in this case, some held within, and some held without, the statute, by Mr. Justice Cardoza at the end of his opinion, 290 U. S. at page 116, 54 S.Ct. 8. See, too, the opinion of Mr. Justice Douglas in Deputy, Administratrix v. Du Pont, 308 U. S. 488, 60 S.Ct. 363, 84 L. Ed. 416, where the expenses in question were held to be without the statute.

We advert briefly to three cases decided by our own Court. In Houston Natural

Gas Corporation v. Commissioner, 4 Cir., 90 F.2d 814, 816, certiorari denied 302 U.S. 722, 58 S.Ct. 43, 82 L.Ed. 557, District Judge Harry E. Watkins, speaking for the Court, said, in connection with money spent by a corporation for the purpose of acquiring new customers, for good will and for eliminating competition: "We are of the opinion these expenditures were correctly disallowed. Under the evidence, they must be considered not upkeep, but investment; not maintenance or operating expense, deductible under the law, but capital, subject to any proper annual allowance for exhaustion."

In Colony Coal & Coke Corporation v. Commissioner, 4 Cir., 52 F.2d 923, 924, our Court said per curiam: "It is contended on behalf of the petitioners that because any liability on the part of the coal companies to the railroad was denied, and the payments only made by way of compromise to avoid litigation, they constituted expense and not capital expenditures. We think not. The fact that a payment is made voluntarily or involuntarily, in the course of legal proceedings or as a result of a compromise settlement, does not change the nature of the transaction. The real test is the character of the transaction that occasions the payment."

And Circuit Judge Parker, in Gauley Mountain Coal Co. v. Commissioner, 4 Cir., 23 F.2d 574, 577, stated: "The taxpayer has acquired property of permanent value in the same sense as does a manufacturing corporation which pays a railroad company to build an industrial siding to its plant, or a land development company which pays a bonus to a street railway company to build a line through its property. Whether the rights acquired as a result of the railroad connection obtained are to be defined as tangible or intangible property, it is not necessary to inquire. Intangible property, which enables a taxpayer to save or earn money, is as legitimate a form of capital investment as tangible property. Thus money spent in building up the circulation of a newspaper has been held to be capital invested, within the meaning of the taxing acts."

In like vein, is the statement of District Judge Watson, speaking for the Circuit Court of Appeals for the Third Circuit in Clark Thread Co. v. Commissioner, 100 F. 2d 257, 258: "The benefits derived from this right cannot be confined to the year in which it was acquired and, therefore, the cost of acquiring it cannot be charged against income earned in that year."

And Circuit Judge Thomas, on behalf of the Circuit Court of Appeals for the Eighth Circuit, in Acer Realty Co v. Commissioner, 132 F.2d 512, 514, said: "Under the statute deductions for corporate salaries can be allowed only when such payments constitute 'ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business.' A capital expenditure is not deductible as an 'ordinary' business expense. It is well-settled that money paid out for the acquirement of something of permanent use or value in one's business is a capital investment and not deductible from income as an 'ordinary' business expense."

See, also, Sunray Oil Co. v. Commissioner, 10 Cir., 147 F.2d 962, certiorari denied 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982; Commissioner v. Boylston Market Association, 1 Cir., 131 F.2d 966, 144 A.L.R. 528; Becker v. Evens & Howard Sewer Pipe Co., 8 Cir., 70 F.2d 596; Baton Coal Co. v. Commissioner, 3 Cir., 51 F.2d 469, certiorari denied 284 U.S. 674, 52 S.Ct. 129, 76 L.Ed. 570.

And very much in point here is this quotation from the opinion of Judge Arnold, speaking for the Tax Court of the United States in the Roberts Filter case, supra: "Deductibility under section 23(a) can be established only by showing that the outlay is within the statutory classification of 'ordinary and necessary expenses' of carrying on the trade or business. If the result of a payment is the acquisition of an asset which has an economically useful life beyond the taxable year, it may be a capital item rather than a deductible expense. Whether a given expenditure is a capital outlay or an expense item depends in part upon the purpose and duration of function of what is acquired. This expenditure was intended to benefit the petitioner by 'the

general effect of the Plan upon the stimulation of interest of the Participants in the management and development of the Company's business and securing their permanent interest and loyalty in the organization' (paragraph VIII, clause 9, trust agreement). Although petitioner paid the amount irrevocably, it acquired by the trust instrument the right to have the fund administered for the prescribed purposes of the trust, and through its officers upon the board of managers it had a substantial voice in the expenditure of the fund. The trust was calculated to result in a long standing business advantage to the petitioner, the effect of which would be felt for many years in the future, as the employees would continually be conscious that this fund was available for their benefit. The investment in the trust was more than a normal incident of carrying on petitioner's business. The payment was made to improve the company's future relations with its employees, not to discharge an ordinary and necessary expense of the taxable year. To treat the payment as a charge against the income of a single year would disregard its purpose and the probable duration of the benefit to result from it. It is more in the nature of a capital investment for the future."

In the instant case, the trust was created to continue for a period of 20 years. During all that time, it would presumably operate to the economic advantage of the employer. And the sum here contributed was to create this trust, hitherto non-existent. The employer, while it had that privilege, was under no obligation to make future contributions to the trust. Only a small, specified amount of the corpus could be paid out in a single year.

It may well be that a contribution made during a single taxable year, bearing some reasonable relation to the expenditures (actual or estimated) from the trust fund during that year, would be an ordinary business expense deductible under § 23(a). We think, however, it would be a violent distortion of the statute to permit the deduction (as is the case here) of a sum of money laid out to create the corpus of a trust that would last and benefit the employer over the entire

contemplated period of 20 years. We do not mean that the duration of the benefit is the sole controlling test. It is, however, one factor—and frequently (as here) a very important one—in the entire picture, which must be practically viewed as a whole.

Here, the trust was created on December 30 of the taxable year in which the taxpayer was approximately in the 90% bracket for excess profits taxes. If we look to economic substance rather than legal form, the taxpayer here is, in a very fat year, creating a reserve to benefit its business in future years (which may be lean), and, at the same time, reducing its tax liability for the year of the creation of the trust. We cannot believe Congress intended thus to open wide the door to tax evasion by taxpayers whose business earnings tend to fluctuate widely from year to year.

Taxpayer here lays great stress on the point that the only asset involved was good labor relations, which the taxpayer already enjoyed; that the expenditure was *not to acquire an asset, but to preserve and maintain one;* that, therefore, this expenditure was not a capital expenditure. See, the Lincoln Electric case, supra; Dunn & McCarthy, Inc. v. Commissioner, 2 Cir., 139 F. 2d 242. We do not recognize this as the vital criterion here. We think the result would be the same whether (1) taxpayer made this expenditure when it first started business to acquire this intangible asset, or (2) taxpayer, as here, made this same expenditure to preserve and maintain admirable existing labor relations.

Nor are we impressed, as to the nature of this expenditure for federal tax purposes, by the fact that the North Carolina Supreme Court, in a declaratory judgment proceeding, declared this trust agreement to be valid and the expenditure to be a proper corporate outlay. Wachovia Bank & Trust Co. v. Steele's Mills, 225 N.C. 302, 34 S.E.2d 425. That holding, in no proper sense, binds us as to the nature of the expenditure under the apposite federal tax statute, § 23(a). The Commissioner here attacks neither the validity of the trust nor the propriety of the expenditure; for there is no occasion for any such attack.

822

Finally, the opinion of Circuit Judge Simons in the Lincoln Electric case, 162 F.2d at page 384, contains an eloquent encomium of trusts created by employers for the benefit of employees. With that encomium we heartily agree. But the federal taxability of expenditures for these trusts does not depend upon their beneficence. Congress has furnished other criteria as determinative of taxability and these criteria we must follow and apply. Whether the ethical and economic excellences of these trusts should place them in a favored federal tax category is a problem for Congress and not for the Courts.

For the reasons stated, we think the expenditure here in question was a capital expenditure which was not deductible as an ordinary expense paid during the taxable year in carrying on taxpayer's business under § 23(a). The judgment of the District Court must, therefore, be reversed.

Reversed.