**ROBERTS FILTER MFG. CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 9680.

United States Court of Appeals
Third Circuit.

Argued Nov. 15, 1948.

Decided March 25, 1949.

David Stock, of New York City (Leonard J. Schwartz and Fox, Rothschild, O'Brien & Frankel, both of Philadelphia, Pa., and E. Wallace Chadwick, of Chester, Pa., on the brief), for petitioner.

Harry Baum, of Washington, D. C. (Theron Lamar Caudle, Asst. Atty. Gen., and George A. Stinson, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before MARIS, GOODRICH and O'CONNELL, Circuit Judges.

O'CONNELL, Circuit Judge.

With four judges dissenting, the Tax Court has upheld the disallowance by the Commissioner of a $40,000 deduction claimed by petitioner in its 1941 tax return as "extra compensation." 1948, 10 T.C. 26. Petitioner here urges that the deduction was authorized by the "ordinary and necessary expenses" provision of section 23 of the Internal Revenue Code, 26 U.S.C.A. § 23(a).[1]

Petitioner, on an accrual calendar-year tax basis, designs and manufactures equipment for filtration plants of municipalities and industries.[2] On December 31, 1941, all but a few shares of the common stock of petitioner were owned by the estate of the father of Charles V. Roberts, president of petitioner.

The nature of its business led petitioner to follow a policy of employing highly-trained personnel and keeping them at work during slack as well as busy periods. On December 31, 1941, consequently, petitioner was paying many of its employees substantially lower wages than employees

---

[1] "Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) Expenses. (1) In general.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered * * *." Revenue Act of 1938, 26 U.S.C.A. Internal Revenue Acts 1924 to Date, page 1011.

[2] Petitioner and its predecessors have been in this business since 1897.

of like ability in other nearby companies were receiving. With the tightening of the labor market, petitioner foresaw increasing difficulty in retaining its personnel unless it raised their wages or took other steps effective to induce the employees to remain. The former course was deemed inadvisable because of the problems likely to be encountered if it later became necessary to reduce wages. At a special meeting held on December 22, 1941, therefore, the board of directors authorized (1) a bonus to its officers and employees, not to exceed $39,000, and (2) the establishing of a $40,000 "profit-sharing trust." [3] The trust instrument was executed on December 31, 1941.

Reciting that the fund therein provided would promote loyalty and efficiency of the trained employees, the trust agreement included the following relevant provisions: (a) Petitioner deposited with the trustee, a bank, $15,000 in cash and a note for $25,000; (b) "all of the present employees" of petitioner, with specified exceptions,[4] who had or attained 5 years of continuous service with petitioner became "participants"; [5] (c) the trust res and accretions thereto could be invested in notes or stock of petitioner and in corporate and individual obligations other than the "legal investments for Trustees" designated by the laws of Pennsylvania, with the further provision that the Board of Managers of the fund could not be held liable for the acquiring or retention of any stock of petitioner; (d) the Board of Managers, five in number, which could act by majority vote, was to consist of the president, the vice-president, an attorney (preferably the counsel of petitioner), an employee with at least ten years of service with petitioner, and a representative of the trustee or person with experience in investment; (e) "very considerable discretion" was vested in the Board of Managers, which was to direct the investments to be made, and which could grant, in amounts to be determined by it, (1) pensions to employees retired after reaching the age of 65, (2) severance or dismissal allowances, (3) disability benefit allowances, (4) grants in aid, (5) personal loans, (6) death benefit allowances, and (7) other benefits; (f) no part of the fund could be paid over to or used directly or indirectly for the benefit of the company; (g) the fund could become exhausted by disbursements made, but could be dissolved only by order of the Board of Managers, ratified by two-thirds of the "participants," and with the consent of petitioner (unless petitioner was "subject to any legal tribunal by reason of insolvency"); if the trust was dissolved, the fund was to be distributed equitably among the "participants," as determined by the Board of Managers; (h) the trustee could be removed by the Board of Managers, if petitioner agreed and was not "incapacitated by bankruptcy or other declared insolvency"; (i) petitioner could, but was not obliged to, make additional contributions to the fund, and as an incident thereto enlarge the list of "participants" (provided further that the contribution was in an amount "ratably equitable" to assure substantially the same basis); (j) unless dissolved or terminated by virtue of the occurrence of one of the contingencies outlined in (g) above, the trust was to continue until the group of "participants" was reduced to twenty; and (k) petitioner, with the consent of the Board of Managers, could amend any of the foregoing

---

[3] The total payroll of petitioner in 1941 was $219,237.60.

According to the minutes of the special meeting, "Mr. Chadwick [attorney of petioner] stated to the Board the legal and tax incidents of a pension trust as compared with a profit-sharing trust and stated that he recommended the latter because of the wider scope of benefits. The matter having been discussed, the Board approved of this latter alternative."

[4] The exceptions were the president, the vice-president, anyone with an interest in the estate of Charles V. Roberts' father, and any one hired after reaching the age of 60. The beneficiaries of the estate were Charles V. Roberts, his mother, and his two brothers.

[5] A list prepared in accordance with this provision named 42 "employees eligible to participate" and 16 "eligible to participate after 5 years service." The average age of the 42 employees was 48, and their average length of service for petitioner was 18 years. Of the 16 not then eligible, 9 had less than 1 year of service with petitioner.

terms except that forbidding the principal or income from enuring directly or indirectly to petitioner.

The final section of the agreement stated that its purpose was that the contributions "represent additional compensation" to the "participants"; that a pension trust as contemplated by section 23(p) of the Internal Revenue Code was not intended, but that petitioner did intend its contributions to be deductible expenses; and that petitioner obligated itself to make such amendments as were necessary to serve and accomplish the purposes of the agreement.

Approximately one year later, petitioner withdrew from the trustee the $25,000 note and, as authorized by the resolution of the board of directors, delivered in substitution therefor a new issue of 500 shares of 4% ·non-cumulative preferred stock of petitioner, par value $50. In determining the nature of the trust which petitioner established, we note that, for a period of three years from the date the trust was established, the fund made disbursements to three "participants": (1) two monthly payments of $60 each to a $1400-per-annum employee, as "disability pension"; (2) thirty monthly payments of $40 each to a $1,400-per-annum employee over 75 years old, as "pension"; and (3) twenty-five monthly payments of $20 each to a $2,400-per-annum employee over 67 years old, "retired." Thus, in the three-year period, disbursements to "participants" totalled $1,820, while the income alone from the note and preferred stock of petitioner was $3,000; and the only disbursements shown in the record as made to "participants" were in the nature of pensions.

At the outset, we can readily confine the scope of the issues before us in two respects: (1) petitioner concedes, and the analysis of the trust outlined above discloses, that the trust does not meet the requirements of section 23(p) of the Internal Revenue Code and that the deductibility of the contribution in question stands or falls on its being a business expense recognized by section 23(a) of the Internal Revenue Code; and (2) even if the contributions to the trust were such a business

expense, only the $15,000 cash contribution could qualify as deductible, since the new issue of preferred stock had the legal effect of merely redistributing the ownership of petitioner rather than affecting its assets, liabilities, or net worth; consequently the stock payment could in no wise be considered an "expense." It remains for us to decide whether the $15,000 cash contribution was deductible under section 23(a) of the Internal Revenue Code.

The allowance of a tax deduction for contributions to trusts with features similar to that here in issue has been determined in a number of Tax Court and appellate decisions. Recently, the United States Court of Appeals for the Fourth Circuit, asserting that the case it had under consideration was so similar to Lincoln Electric Co. v. Commissioner, 6 Cir., 1947, 162 F.2d 379 and the case at bar that the decision should be the same in all three, specifically endorsed the reasoning of the Tax Court in the instant case and denied the deduction. Robertson v. Steele's Mills, 4 Cir., 1949, 172 F.2d 817. The comprehensive opinions filed in Robertson, Lincoln Electric, and the Tax Court in the case sub judice lead us to refrain from again elaborating, except by way of supplementary material, upon a field already so well-documented. All agree that the establishing of employees' beneficial trusts by employers is a praiseworthy step, but that a tax deduction for contributions to such beneficial trusts must nonetheless be based upon some provision of section 23 of the Internal Revenue Code. The difference of opinion thus far displayed among the judges who have been called upon to hear and review this field of litigation arises over the question whether a contribution to a trust which does not meet the requirements of section 23(p) of the Internal Revenue Code, in which category that at bar belongs, may be recognized as an ordinary and necessary expense under section 23(a).

The legislative history of section 23(p) seems to us not inapposite to such determination. As is outlined in Chapter 9, Volume 1 of Montgomery's Federal Taxes, Corporations and Partnerships, 1948-49,

pages 515, 516, Congress had provided since 1921 that the income of employees' beneficial trusts was not taxable to the trusts, but that certain distributions from such trusts to employees were taxable to the employees. See, for example, section 219(f) of the Revenue Act of 1926, 26 U.S. C.A. Internal Revenue Acts 1924 to Date, page 176. Before the Revenue Act of 1928, the statute which redrafted and renumbered federal tax law into substantially its present form, there was, however, no specific provision governing the deductibility of contributions by employers to any such beneficial trusts. As prepared and passed by the House of Representatives, the Act still contained no such provision. The Senate, however, proposed and passed an amendment allowing as a deduction amounts transferred to a pension trust from a pension reserve fund accumulated under a pension plan previously in force.[6] From the conference committee thereafter appointed to resolve the differences between the House and Senate drafts emerged the provision which both legislative bodies approved. Section 23(q), Revenue Act of 1928, 26 U.S.C.A. Internal Revenue Acts 1924 to Date, pages 359-360.

The report made by the House conference managers, as to this amendment, seems to us highly significant: "On amendment No. 35: The Senate amendment provided that an employer who had established a pension reserve could transfer the reserve to a pension trust of the type exempt under section 165 of the bill, and would be permitted to deduct the amounts so transferred, the deduction to be prorated over a period of years equivalent to the time during which the reserve was accumulated. There are two other classes of cases which should be provided for: (1) The creation of a pension trust by an employer who has had a pension plan in existence, but who has been paying the pensions out of current income, for example, without the establishment of a pension reserve; and (2) the employer who creates a pension trust and adopts for the first time a pension plan. Upon the creation of a pension trust, the payments of the employer, in any of the above cases, consist of contributions covering the pension liability accruing during the year *(which are allowed as a deduction under section 23(a) of the new law, assuming the reasonableness of the contribution)* and payments made during the year, for example, on account of the pension liability which would have accrued during prior years had the plan been in existence, or to build up reserves in order to place the plan upon a basis which is actuarily [sic] sound. The House recedes with an amendment permitting the spread of the payments of the latter type above described over a period of 10 years." (Emphasis supplied.) 69 Cong.Rec. 10126, May 6, 1928. It would therefore appear that both branches of the legislature contemplated that, upon creation of a pension trust, section 23(a) could be utilized only to the extent that the trust received contributions (a) in reasonable amount and (b) defraying liabilities which accrued during the year under the terms of the pension plan. Cf. Clark Thread Co. v. Commissioner, 3 Cir., 1939, 100 F.2d 257, 258, cited in Robertson v. Steele's Mills, supra.

Moreover, in recommending the 1942 amendment of section 23(p) which provides that contributions of an employer under a stock bonus, pension, profit-sharing, or annuity plan "shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent," 26 U.S.C.A. Internal Revenue Acts Begin-

---

[6] Numbered 35, the Senate amendment read as follows: "(q) Pension trusts: In the case of an employer establishing or maintaining a pension trust for the benefit of his employees which is exempt from tax under section 165, amounts transferred to such trust from a pension reserve fund accumulated prior to the enactment of this act, under a pension plan previously in force, to the extent that the amounts so transferred have not been theretofore allowable as a deduction. The deduction allowed by this paragraph shall be apportioned in equal parts over a number of consecutive years (beginning with the year in which the transfer is made) equal to the number of years during which such pension reserve fund was accumulated." 69 Cong.Rec., page 7869. May 5, 1928.

ning 1940, page 238, the House Ways and Means Committee reported as follows: "Thus, it is necessary [under the law as it has been, prior to the proposed amendment] to determine what contributions are deductible under section 23(a) in order to cover the pension liability accruing during the year, and then to determine how much is deductible under section 23(p). It has been decided that in the interest of clarification and administration of the tax laws no deductions should be allowable under section 23(a) for amounts paid into a pension trust, but all such deductions should be allowable only under section 23(p)." H. Rep. No. 2333, 77th Cong. 2d Sess., p. 105 (1942-2 Int.Rev.Cum.Bull. page 451). That section 23(p) from its inception was intended to circumscribe the application of section 23(a) to employees' beneficial trusts, within limits which could not include a trust like that at bar, would seem irrefutable.

In the light of the consistent legislative approach toward deductions,[7] it would be incongruous, indeed, and would mean effectual deletion of section 23(p) from the revenue statutes between 1928 and 1942, to permit a taxpayer to gain a greater legal deduction by failing to comply with that provision than would be granted another taxpayer who did meet its requirements.

Were it necessary for us to choose, therefore, between the reasoning of the Lincoln Electric case, as opposed to that of Steele's Mills and the Tax Court in the instant case, we should feel constrained to adopt the view limiting the scope of the "ordinary and necessary expenses" clause. The facts of Lincoln Electric Co. v. Commissioner, supra, nevertheless, are so different from those under review as to foreclose petitioner from all possibility of claiming its 1941 contribution as a deductible business expense. Comparison of the facts is in order. (1) In Lincoln Electric,

the court of appeals was strongly influenced by the fact that the employer had a long history of granting its employees, in addition to their salaries, substantial benefits such as a bonus and retirement annuity policies; in the case at bar, there is no evidence that its employees ever before received any benefit other than their salaries. (2) In Lincoln Electric, the court of appeals also stressed that the Commissioner for six years had allowed the deduction of annuity premiums and then disallowed the premiums for the years in question; in the instant case, no insurance premiums are involved. (3) In Lincoln Electric, eligibility for the benefits of the trust extended to all employees then serving petitioner except the salesmen, the president, and the chairman of the board of directors; in the case sub judice, the "participants" were limited, inter alia, to those in the service of petitioner for at least five years, and, with minor exceptions, "participants" lost their status as such by leaving the employ of petitioner. (4) In Lincoln Electric, the trust was to terminate at the end of ten years; in the case before us, the date of termination, being dependent upon the exhaustion of the fund or the reduction in number of "participants" to twenty, was indefinite. (5) In Lincoln Electric, the percentage of the fund which each employee would receive at termination of the trust could have been computed when the trust was created, since the share of each was based upon an already completed salary period and was not subject to loss because of death or severance of employment; here, what each "participant" would receive at termination is not ascertainable, but dependent upon what the Board of Managers determines at some indefinite date in the future. (6) In Lincoln Electric, two of the three members of the Committee were required to be beneficiaries of the trust, and the Committee had appreciably less

---

[7] It is also not without interest to note that, while the provision permitting deduction of charitable contributions, section 23(q) of the Internal Revenue Code, like the pension trust provision prior to 1942, includes no clause specifically eliminating the possibility of applying section 23(a), the Ways and Means Committee report of January 14, 1938, pertinent portions of which are reprinted at 4 Tax Law Review 125 (November, 1948), states that the deduction of charitable contributions as business expenses "is no longer possible under the bill * * *."

discretion than did the Board of Managers in the case under consideration, the members of which Board were doubtless responsive to the desires of the management of petitioner.[8] (7) In Lincoln Electric, the employer reserved no power of modification; in the instant case, the only real limitation upon the power of petitioner to modify was that prohibiting the fund from enuring to petitioner. (8) In Lincoln Electric, the trustee was not permitted to invest in the stock or obligations of the employer; in the case at bar, not only was the fund specifically authorized to do so, but also the employer-dominated Board could instruct the trustee to acquire or retain stock of petitioner without incurring personal liability by virtue of such action.[9]

Still other distinctions might be mentioned, but the foregoing we deem more than sufficient. If the trust fund established in Lincoln Electric did have sufficient substance to qualify a contribution to it as "ordinary" and "expenses"—as to which the Steele's Mills decision, that of the Tax Court here, and the legislative history give rise to considerable doubt—assuredly the instant trust was entirely too illusory to justify similar treatment. Petitioner did little more than promise that, at some time in the indefinite future, it would distribute a fund, of uncertain size, in undetermined proportions or amounts, among a fraction of its employees. The record discloses no instance when the fund was treated as anything other than a pension fund, one very similar to that for which a deduction was denied in South Texas Commercial Nat. Bank of Houston v. Commissioner, 5 Cir., 1947, 162 F.2d 462, certiorari denied 1947, 332 U.S. 772, 68 S.Ct. 87.[10]

We are consequently impelled to the conclusion that, desirable as the trust may have been from an ethical point of view, there was substantial basis for the Tax Court decision that the creation of this trust was not an ordinary and necessary expense of petitioner. Accordingly, the decision of the Tax Court will be affirmed.

---

[8] Of the five members of the Board, two were the president and vice-president of petitioner, and thus ineligible to be "participants"; two, the attorney for petitioner and the representative of the trustee (which could be removed by a majority of the Board), may be safely assumed to have been sympathetic to the position of the officers of petitioner. The lone employee representative was the chief engineer, an employee for 32 years who, besides the sales manager, was the only non-officer employee of petitioner paid more than $4,250 in 1941.

[9] It is probably unnecessary to point out that, through this provision, petitioner had an effective way of regaining substantial possession of the fund which the trust instrument presumably granted away irretrievably.

[10] While the Tax Court and the court of appeals discussed only the applicability of section 23(p) of the Internal Revenue Code, we believe it would be ingenuous to assert that the tribunals were not familiar with the "ordinary and necessary expenses" provision, or that the doctrine enunciated in the Lincoln Electric case was not considered at some stage of the proceedings.