SLAYMAKER LOCK COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24648. Promulgated September 15, 1952.

*Richard S. Doyle, Esq.*, and *Jules G. Korner, III, Esq.*, for the petitioner.

*Edward Pesin, Esq.*, for the respondent.

OPINION.

BRUCE, *Judge:* The first question for decision is whether or not the delivery of petitioner's demand negotiable promissory note to the trustee of its employees' pension fund, in and of itself, constituted a deductible payment under section 23 (p) of the Internal Revenue Code. There is no question but that the payment of $10,500 made by petitioner to the trustee on January 5, 1944, on account of said note, coming within the 60-day period allowed by section 23 (p) (1) (E), was deductible, and the Commissioner so held.

Deductions are granted to taxpayers by the legislative grace of Congress, and in order to secure deductions taxpayers must. clearly show that they are within the terms of the statute as written. *New Colonial Ice Co.* v. *Helvering*, 293 U. S. 435; *Lake* v. *Commissioner*, 148 F. 2d 898, certiorari denied 326 U. S. 732.

Section 23 (p)[1] allows the deduction of contributions of an employer to an employees' trust in the year when "paid." Section 23 (p) (1) (E) provides that a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is made within 60 days after the close of the taxable year of accrual. In *Logan Engineering Co.*, 12 T. C. 860, 868, we held that "* * * section 23 (p), like sections 23 (o) and 23 (q), had the effect of placing cash and accrual taxpayers upon an equal footing (subject to the exception spelled out in section 23 (p) (1) (E)," and that "an actual payment of the contribution to an employees' trust in the taxable year is a prerequisite to the allowance of a deduction on account thereof, and that the issuance and delivery of a promissory note does not constitute such actual payment."

Petitioner's argument that this Court erred in its conclusions in the *Logan* case, *supra*, is based upon certain decisions of the Courts of Appeals involving the interpretation of the word "paid" as used in section 24 (c) and legislative history. Similar arguments were con-

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

 * * * * * * *

 (p) CONTRIBUTIONS OF AN EMPLOYER TO AN EMPLOYEES' TRUST OR ANNUITY PLAN AND COMPENSATION UNDER A DEFERRED-PAYMENT PLAN.—

 (1) GENERAL RULE.—If contributions are paid by an employer to or under a stock bonus, pension, profit-sharing, or annuity plan, or if compensation is paid or accrued on account of any employee under a plan deferring the receipt of such compensation, such contributions or compensation shall not be deductible under subsection (a) but shall be deductible, if deductible under subsection (a) without regard to this subsection, under this subsection but only to the following extent:

 * * * * * * *

 (E) For the purposes of subparagraphs (A), (B), and (C), a taxpayer on the accrual basis shall be deemed to have made a payment on the last day of the year of accrual if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual.

 * * * * * * *

sidered in the *Logan* case. Further discussion herein is deemed unnecessary. Our decision in the *Logan* case is accordingly dispositive of the question here presented unless distinguishable on the facts.

Petitioner points to the following language contained in the trust agreement as a distinguishing feature:

WHEREAS, the Corporation has appropriated, authorized and directed its Treasurer to irrevocably assign to the Trustee on or before December 31, 1943, or within sixty days thereafter, in cash, property or securities, up to the sum of Fifty-Five Thousand Dollars ($55,000.00), the exact amount to be that sum which will provide for the annual service reserve, plus one-tenth of past service reserve for all employees included in the Plan, as shall be determined by accurate actuarial computations, as original corpus for the Trust Fund; * * *

It argues that the demand note herein was such *property* or *security* the delivery of which within the taxable year constituted payment, and the Commissioner having approved the trust plan as meeting the requirements of section 165 (a) is now estopped from ruling that the giving of the demand note did not constitute a deductible payment.

"Where the definite word 'paid' is used in the statute, its ordinary and usual meaning is to liquidate a liability in cash," *Logan Engineering Co., supra; Lake v. Commissioner, supra.* It is to be assumed that all parties were fully aware of the requirements of the statute and the regulations thereunder (Regs. 111, sec. 29.23 (p)–1), and that in approving the trust agreement the Commissioner construed the terms of the agreement to contemplate actual payment, not a mere promise of payment.[2] Any other construction would have been a modification of the statute and without authority. Citation of authority would not seem to be necessary to establish that an estoppel does not operate under such circumstances. *Utah Power & Light Co.* v. *United States*, 243 U. S. 389, 408, 409; *Federal Crop Insurance Corporation* v. *United States*, 332 U. S. 384.

Moreover, even if payment were authorized in "*property* or *securities*" the delivery by petitioner of its own demand note does not constitute such payment. In order for there to have been an assignment or transfer of property or securities, the thing assigned or transferred must have been such while in possession of the assignor or transferor. It was neither. A demand note has no legal inception or existence as a negotiable instrument prior to its delivery. 7 Am. Juris. (Bills and Notes, § 32), p. 807. "A note in the hands of its maker before delivery is not property, nor the subject of ownership, as such." *Salley* v. *Terrill*, 95 Me. 553, 50 Atl. 896, 55 L. R. A. 730, 85 Am. St. Rep. 433.

---

[2] It is also noted that the resolution of petitioner's board of directors, dated October 6, 1943, (copy of which was also submitted to the Commissioner in connection with the request for his ruling under section 165 (a)) authorized and directed the treasurer to assign and transfer "a sum or sums not exceeding Fifty-Five Thousand ($55,000) Dollars to the Trustee of said Employees' Trust" and makes no mention of property or securities.

Nor is the fact that the note involved in the instant case was a demand note sufficient to distinguish it from our previous decisions holding that the giving of a promissory note does not constitute payment within the meaning of section 23 (p), as contended by petitioner. The delivery of a demand note was not the equivalent of payment by check.

As stated in *Estate of Modie J. Spiegel*, 12 T. C. 524, 526, "It [payment by check] was necessarily placed in a different category from a mere promise to pay; or even from such a promise reduced to formal terms and issued in the form of a negotiable promissory note." A valid check necessarily implies sufficient funds in the bank at the time it is drawn and that it will be honored by the bank when presented. No further affirmative action is required of the drawer. A promissory note payable either on demand or at some future designated time is no more than its name connotes—a promise on the part of the maker to pay—in both instances at some future time, though the one fixes a date prior to which payment may not be required. Further action by the promissor is necessary before payment is consummated. He may or may not have sufficient funds on hand with which to make payment when requested and a line of credit available when the note was given may have been exhausted or be insufficient.

Finally petitioner states and there was testimony to the effect that there was an agreement or understanding between its executive committee and the pension board that the corporation's contributions to the pension fund when paid would be loaned back to the corporation in order to enable the pension fund to start earning the actuarially required 3 per cent until such time as the pension board should acquire mortgages or other more favorable forms of investment, and to help the corporation finance its Government contracts. Petitioner asserts that the delivery of its demand negotiable promissory note was thus the consummation of the two transactions consolidated for convenience into one, namely, (1) payment of the sum of $54,326.30 to the trustee of its employees' pension fund, and (2) the loan of such sum by the trustee back to the corporation. While petitioner had a line of credit which would have enabled it to borrow the money from the banks with which to make payment of the contribution to the pension fund at that time, the arrangement as carried out enabled the corporation both to utilize its line of credit with the banks and to have the use of the $54,326.30 due the pension fund, without security or any specified amount of interest. The statute involved, section 23 (p), requires actual payment within the taxable year, not an assumed or conditional payment. Such a promissory note is not a corporate security such as contemplated in section 1 (b) of article II of the trust indenture, and it is doubtful if such a conditional payment would have been permitted to have been included in the trust indenture

in view of section 165 (a) (2) prohibiting any part of the corpus or income to be used for or diverted to purposes other than the exclusive benefit of the employees or beneficiaries.

We accordingly conclude that the delivery of petitioner's demand negotiable promissory note to the trustee of the employees' pension fund on December 31, 1943, did not constitute a deductible payment under section 23 (p) of the Internal Revenue Code. For similar reasons the delivery of the note of February 29, 1944, did not constitute a deductible payment under section 23 (p) (1) (E).

The second question for decision is whether certain amounts expended by petitioner during 1944 and 1945 for the purchase, renovation and improvement of a recreation lodge which it conveyed to its formen's association were deductible or ordinary and necessary expenses under section 23 (a), Internal Revenue Code.

The statute provides that a taxpayer may have as a deduction from gross income "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *."

The term "necessary" as used in section 23 (a) does not mean indispensable. In order for expenditures to be "necessary" in carrying on any trade or business it is sufficient if "there are also reasonably evident business ends to be served, and an intention to serve them appears adequately from the record." *B. Manischewitz Co.*, 10 T. C. 1139. Similarly, expenses incurred in carrying on any trade or business are "ordinary" if within "the norm of general and accepted business practice." Cf. *Deputy* v. *DuPont*, 308 U. S. 488. As observed by the Supreme Court in the case of *Welch* v. *Helvering*, 290 U. S. 111, 113, 114: "* * * what is ordinary, though there must always be a strain of constancy within it, is none the less a variable affected by time and place and circumstance."

During the war years 1944 and 1945 petitioner's volume of business more than quadrupled what it had been during the prewar years and its working force necessary to enable it to perform its wartime contracts was approximately doubled. In order to increase its working force petitioner had to compete with other industries in the area likewise engaged in war activities. Some of these were large, well known industries with higher wage bases than petitioner was able to meet due to Governmental wage stabilization regulations. Petitioner's officers testified that the farmhouse and grounds were purchased, renovated and conveyed to its foremen's association to be used for recreational purposes by all its employees as a means of holding old employees, to attract new employees and to cut down its labor turnover. The expenses incurred by petitioner in purchasing and improving the lodge property were approximately 2.65 per cent of its payroll cost for 1944 and 1945.

Respondent contends that the expenditures involved were not ordinary and necessary expenses deductible under section 23 (a), but that they constituted capital expenditures amortizable over the life of the property. The authorities relied upon by respondent, however, are distinguishable on the facts from the instant case. One important distinguishing feature is the element of control by the taxpayer; another is the relation of the property constructed or improved to other property of the taxpayer. In the cases relied upon by the respondent the expenditures involved did not fall within the norm of general and accepted business practice (*Deputy* v. *DuPont, supra; Roberts Filter Manufacturing Co.*, 10 T. C. 26, affd. 174 F. 2d 79; *Oswego Falls Corporation*, 46 B. T. A. 801, reversed on other grounds, 137 F. 2d 173), were not reasonably necessary to the conduct of the taxpayer's business (*Climax Spinning Co.*, 8 B. T. A. 970), consisted of improvements to property owned and retained by the taxpayer (*Woodside Cotton Mills Co.*, 13 B. T. A. 266, the paving of streets of mill village owned by the company; *Athenia Steel Co.*, 1 B. T. A. 559, brick building erected for use as a club on company property title to which was retained by the company), or they served to enhance the value and use of taxpayer's property (*Kauai Terminal, Ltd.*, 36 B. T. A. 893, involving participation with the Government in the construction of a harbor breakwater; *Scovill Manufacturing Co.*, 25 B. T. A. 265, involving improvement of a dam and reservoir serving the company's plant). In the instant case the lodge property was located at some distance from the company's plant and had no usefulness in connection with the operation of the plant.

Viewed in the light of the time, place and circumstances, and previous decisions of this Court, it is our conclusion that such expenses were ordinary and necessary expenses paid or incurred by petitioner during the taxable years in carrying on its trade or business. *B. Manischewitz Co., supra; Poinsett Mills*, 1 B. T. A. 6; *Holt-Granite Mills Co.*, 1 B. T. A. 1246; *Elm City Cotton Mills*, 5 B. T. A. 309; *Superior Pocahontas Coal Co.*, 7 B. T. A. 380; *Franklin Mills*, 7 B. T. A. 1290; *Weil Clothing Co.*, 13 T. C. 873.

*Decision will be entered under Rule 50.*